OR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2313-12T2


JAMES J. PROCOPIO, JR.,

    Plaintiff-Respondent,

v.

GOVERNMENT EMPLOYEES INSURANCE
COMPANY, a/k/a and d/b/a GEICO,

    Defendant-Appellant.

<table>
<tr><td>APPROVED FOR PUBLICATION<br><br>November 21, 2013<br><br>APPELLATE DIVISION</td></tr>
</table>

_____

Argued September 23, 2013[1]
Reargued November 4, 2013 - Decided November 21, 2013

Before Judges Parrillo, Harris and Guadagno.

On appeal from the Superior Court of New
Jersey, Law Division, Camden County, Docket
No. L-6191-11.

Feeda R. Musitief (Fine and Staud, LLP)
argued the cause for appellant.

Walter H. Iacovone argued the cause for
respondent (Margolis Edelstein, attorneys;
Mr. Iacovone, on the brief).

The opinion of the court was delivered by

PARRILLO, P.J.A.D.

_____

[1] As Judge Guadagno was added after oral argument, the appeal was reargued pursuant to R. 2:13-2(b).

We granted leave to appeal an interlocutory order of the Law Division that severed for trial purposes plaintiff's underinsured motorist (UIM) claim from his bad faith and other claims against his carrier, defendant Government Employees Insurance Company (GEICO), but nevertheless directed discovery to proceed simultaneously on all claims. For the following reasons, we reverse.

Plaintiff James Procopio, Jr. was injured in an automobile accident with another driver, also insured by GEICO. In his action against the other driver, plaintiff received the tortfeasor's GEICO insurance policy limit of $15,000. Thereafter, plaintiff filed a complaint against GEICO, asserting claims for UIM benefits under his own policy as well as bad faith refusal to pay the claim, breach of contract, and violations of the New Jersey Consumer Fraud Act (bad faith claims).

During the discovery process, in which plaintiff sought, among other things, his carrier's entire claim file and other information specifically related to prosecution of plaintiff's bad faith claims, GEICO moved to sever the bad faith claims and hold them in abeyance pending resolution of the UIM benefits matter. Plaintiff responded by moving to compel discovery. The motion judge bifurcated the claims for trial, held the bad faith

claims in abeyance, but compelled simultaneous discovery on all claims. The judge denied GEICO's motion for clarification or reconsideration, reasoning that defendant would not be prejudiced by compelling discovery of the bad faith claims contemporaneous with discovery of the UIM claim. Recognizing the potential problems inherent in such an approach, however, the court allowed that any discovery requests implicating privileged materials would be subject to a motion for a protective order and that he would not permit discovery into a privileged area.

On appeal, GEICO maintains the motion court abused its discretion by compelling discovery on the bad faith claims to proceed before resolution of the UIM claim. We agree.

In general, pursuant to Rule 4:10-2(a), a party can obtain discovery regarding any non-privileged materials that are relevant to the underlying matter. "New Jersey's discovery rules are to be construed liberally in favor of broad pretrial discovery." Payton v. N.J. Tpk. Auth., 148 N.J. 524, 535 (1997); see also Jenkins v. Rainner, 69 N.J. 50, 56 (1976). We review a trial court's decision on discovery matters under the abuse of discretion standard. Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011). This standard requires our court to "generally defer to a trial court's disposition of

discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law."  Ibid. (quoting Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div.), certif. denied, 185 N.J. 296 (2005)).

Under Rule 4:38-2, the trial court may order a separate trial of any claims or issues "for the convenience of the parties or to avoid prejudice[.]"  In general, the power to sever claims rests in the trial court's discretion.  Tobia v. Cooper Hosp. Univ. Med. Ctr., 136 N.J. 335, 345 (1994).  In addition, the authority to stay a proceeding is also within the sound discretion of the trial court.  State v. Korbin Sec., 221 N.J. Super. 169, 174 (App. Div. 1987), rev'd, 111 N.J. 307 (1988).  The Supreme Court has noted that

> the power to stay proceedings is incidental
> to the power inherent in every court to
> control the disposition of the causes on its
> docket with economy of time and effort for
> itself, for counsel, and for litigants.  How
> this can best be done calls for the exercise
> of judgment, which must weigh competing
> interests and maintain an even balance.
>
> [Landis v. N. Am. Co., 299 U.S. 248, 254-55,
> 57 S. Ct. 165, 165-66, 81 L. Ed. 153, 158
> (1936).]

In Taddei v. State Farm Indemnity Co., 401 N.J. Super. 449, (App. Div. 2008), the insured sued his carrier for uninsured motorist (UM) benefits after he was injured in an accident with an unknown motorist.  Id. at 451.  Because the insured never

pled a bad faith claim, we found that the trial court was not required to address or make findings on the insured's claim, casually mentioned for the first time during trial, that the insurer may have acted in bad faith in delaying resolution of the insured's claim under the UM provision in his policy. Id. at 465. Although expressly declining to decide whether the entire controversy doctrine mandated inclusion of both claims in the plaintiff's complaint, id. at 466, we went on to address such a situation and to provide guidance on how to properly balance the equities of the parties while adhering to the strictures of the doctrine:

> [t]o respect the rights of all parties, the underlying [UIM] claim could be severed from the bad faith claim, with the latter being held in abeyance until conclusion of the former. The severed bad faith claim would then be activated, triggering the possibility for the right to discovery, motions, and, if necessary, a separate trial. . . . In this way, the plaintiff's ability to pursue a potential bad faith claim would be preserved, but the insurer would not be required to produce its claim file prematurely, '[o]therwise, privileged material may be disclosed which would jeopardize the insurance company's defense.'
>
> [Id. at 465-66 (citing Bartlett v. John Hancock Mut. Life Ins. Co., 538 A.2d 997, 1000-02 (R.I. 1988)).]

The approach outlined in Taddei promotes judicial economy and efficiency by holding in abeyance expensive, time-consuming,

and potentially wasteful discovery on a bad faith claim that may be rendered moot by a favorable ruling for the insurer in the UM or UIM litigation.  This procedure also avoids the premature disclosure of arguably privileged materials to the prejudice of the insurer's defense while, at the same time, preserving the insured's pursuit of its bad faith claim.

In Bartlett, supra, the plaintiff's complaint alleged that the defendant both breached its duty under a contract of life insurance and acted in bad faith by denying liability for accidental death benefits under the policy in which the plaintiff was named as sole beneficiary.  538 A.2d at 997.  In quashing the trial court's order compelling discovery of the defendant insurance company's claim file while the plaintiff's contract claim was still pending, the Rhode Island Supreme Court reasoned that "there can be no cause of action for an insurer's bad-faith refusal to pay a claim until the insured first establishes that the insurer breached its duty under the contract of insurance."  Id. at 1000.  Furthermore, in order to have a bad faith claim, the plaintiff must establish that there was no "reasonable basis for denying [him or her] benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim."  Ibid. However, as a threshold matter, there can be no bad faith claim

if the insurance company can provide a reasonable basis for denying the insured the benefits under the contract.  Ibid.

Consequently, the Bartlett court held that an insured cannot obtain complete discovery of an insurance company's claim file simply by bringing simultaneous breach of contract and bad faith claims, but rather must wait until the insured establishes an entitlement on the underlying contract claim.  Id. at 1000-01.  In other words, a plaintiff must first show that he or she is entitled to recover on the contract before he or she can prove that the insurer dealt with him or her in bad faith. Ibid.

Other jurisdictions have followed suit.  See, e.g., Brown v. Superior Court, 670 P.2d 725, 728 n.1 (Ariz. 1983) ("One could plausibly argue that the law should not allow such simultaneous actions and that a bad-faith claim can be pursued only after disposition of the underlying policy claim."); Maryland Am. Gen. Ins. Co. v. Blackmon, 639 S.W.2d 455, 457-58 (Tex. 1982) ("Regardless of the other reasons which might justify the use of this information, it would be impossible to limit the prejudicial effect of disclosure on [the insurer's] right to defend the contract cause of action.  Moreover, if a plaintiff attempting to prove the validity of a claim against an insurer could obtain the insurer's investigative files merely by

alleging the insurer acted in bad faith, all insurance claims would contain such allegations."); <u>Nat'l Sav. Life Ins. Co. v. Dutton</u>, 419 <u>So.</u>2d 1357, 1362 (Ala. 1982) ("In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law."); <u>Allstate Ins. Co. v. Swanson</u>, 506 <u>So.</u>2d 497, 498 (Fla. Dist. Ct. App. 1987) ("Until the right of coverage is first established, a plaintiff claiming to be an insured cannot compel disclosure of the insurer's work product and privileged matters in its claim file. Otherwise, the discovery rule established by the courts in these cases could be circumvented by simply combining the two causes of action." (citations omitted)).

We find the reasoning of <u>Taddei</u>, <u>supra</u>, and the aforementioned cases compelling. Preserving the insured's ability to pursue his or her bad faith claim while deferring discovery thereon until resolution of the UM or UIM claim best accommodates the varying interests involved. Indeed, we discern very little benefit in allowing discovery to proceed simultaneously since a claim for UIM benefits is separate and distinct from a claim of bad faith and the evidence used to

establish each claim is very different, as the motion judge himself presumably recognized by ordering the severance of these causes of action.

The toll on judicial economy by allowing full disclosure up front, on the other hand, is obvious. Requiring simultaneous discovery on both claims will result in a significant expenditure of time and money, generally rendered needless if the insurer prevails on plaintiff's UM or UIM claim.[2] Such premature discovery may also jeopardize the insurer's defense of the UM or UIM claim by the disclosure of potentially privileged materials. Indeed, if an insured attempting to prove the validity of his or her claim against an insurer could obtain the insurer's investigative files — showing exactly how the company processed the claim, how thoroughly it was considered and why the company took the action it did — merely by alleging the insurer acted in bad faith, then there would be an open invitation to all plaintiffs to include such allegations with every breach of contract claim.

Whatever, therefore, the benefits of simultaneous discovery, they are substantially outweighed by the burdens

---

[2] We leave open the possibility that an insurer's denial of a claim it was not obligated to pay might nevertheless be in bad faith if its conduct was extreme and produced damages unrelated to and independent of the policy claim. See <u>Progressive County Mutual Ins. Co. v. Boyd</u>, 177 <u>S.W.</u>2d 919, 922 (Tex. 2005).

A-2313-12T2

exacted both institutionally and individually.  The motion judge's failure to recognize these adverse impacts and to properly weigh the interests of the parties resulted, in our view, in an erroneous exercise of discretion.  No persuasive reason appears in the record to depart from the approach suggested in <u>Taddei</u>, <u>supra</u>, and adopted in other jurisdictions.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2313-12T2