NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0742-25
A-0988-25

NOAH TENENBAUM,

    Plaintiff-Respondent,

v.

ALLSTATE INSURANCE
COMPANY,

    Defendant-Appellant.

_____

LINDSAY CIRELLI,

    Plaintiff-Respondent,

v.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY,

    Defendant-Appellant.

_____

<table>
<tr><td>APPROVED FOR PUBLICATION</td></tr>
<tr><td>April 29, 2026</td></tr>
<tr><td>APPELLATE DIVISION</td></tr>
</table>

        Argued March 16, 2026 – Decided April 29, 2026

        Before Judges Sabatino, Natali and Walcott-Henderson.

        On appeal from interlocutory orders of the Superior Court of New Jersey, Law Division, Middlesex County, Docket Nos. L-2505-25 and L-2601-25.

John V. Mallon argued the cause for appellant Allstate Insurance Company (Chasan Lamparello Mallon & Cappuzzo, PC, attorneys; John V. Mallon, of counsel and on the brief; Thomas R. Lloyd, on the brief).

Evan D. Haggerty argued the case for appellant Government Employees Insurance Company (Goldberg Segalla LLP, attorneys; Thomas M. Wester, on the brief).

David S. Rochman argued the cause for respondent Lindsay Cirelli.

The opinion of the court was delivered by

NATALI, J.A.D.

In these appeals, before us on leave granted and consolidated for the purposes of issuing a single opinion, defendants Allstate Insurance Company (Allstate) and Government Employees Insurance Company (GEICO) challenge the court's orders that essentially denied their applications to stay discovery and sever plaintiffs Noah Tenenbaum's and Lindsay Cirelli's[1] common law bad faith claims under Pickett v. Lloyd's, 131 N.J. 457, 467 (1993), and those brought under the recently adopted Insurance Fair Conduct Act (IFCA),

---

[1] At certain points during our opinion, we refer to plaintiffs by their respective surnames for clarity. We intend no disrespect in doing so.

N.J.S.A. 17:29BB-1 to -3, until resolution of all disputes related to their underinsured motorist (UIM) claims.[2]

Since we granted leave to appeal, the parties in A-742-25 advised us that they resolved all issues regarding Tenenbaum's right to UIM benefits under his Allstate policy, leaving only their dispute regarding the viability of Tenenbaum's common law bad faith claim and his cause of action against Allstate under the IFCA. In light of that development, we discern no justiciable issue remaining regarding the propriety of the court's orders under review, and the appeal is accordingly dismissed as moot. The challenges to the court's orders in A-988-25 remain justiciable, however, and after considering the parties' arguments, and the applicable law, we conclude the court erroneously exercised its discretion when it denied GEICO's application

---

[2] A UIM or uninsured motorist (UM) action is "essentially a contract-based substitute for a tort action against the tortfeasor." Bardis v. First Trenton Ins. Co., 199 N.J. 265, 279 (2009) (citing Krohn v. N.J. Full Ins. Underwriters Ass'n, 316 N.J. Super., 477, 483 (App. Div. 1998)) (stressing that UIM cases are tried in the manner of third-party tort actions). In light of this principle, our courts have held that the rules governing liability in a UIM or UM case "should be no different . . . than those that apply in the trial of an ordinary tort action arising from a motor vehicle accident." Ibid. (citing Stabile v. N.J. Mfrs. Ins. Co., 263 N.J. Super. 434, 441 (App. Div. 1993)). Further, as we have observed, "'whether [the tortfeasor's] inadequacy is no insurance at all or underinsurance has no conceptual consequence' because '[i]n both instances, the insured victim's recovery is . . . a substitute for that which would have been derived from a third-party suit but for the inadequacy of the tortfeasor's insurance.'" Ibid. (alterations in original) (citing Stabile, 263 N.J. Super. at 441 (App. Div. 1993)).

to stay prosecution of plaintiff's common law bad faith claim and its IFCA cause of action until resolution of her UIM matter.

I.

We derive the relevant facts from the sparse motion record. As best we can discern, plaintiffs were involved in separate automobile accidents allegedly caused by the negligence of an underinsured motorist. Tenenbaum was insured by a standard policy issued by Allstate and Cirelli similarly insured by GEICO.

A-742-25

In A-742-25, plaintiff's two-count complaint neither sought declaratory nor other relief with respect to Allstate's alleged breach of his contractual UIM rights but instead solely asserted a common law bad faith claim and a second cause of action under the IFCA. Both counts stemmed from the same alleged conduct underlying Allstate's "bad faith" – the denial of his UIM claim – which plaintiff contended caused significant "financial loss and delays."

As to his common law bad faith count, plaintiff specifically alleged he "asserted a claim for UIM benefits pursuant to the policy, which [Allstate] continuously and wrongfully has denied fair and reasonable compensation." With respect to his IFCA-based claim, he claimed to have been "unreasonably denied a claim for coverage or payment of benefits and has and continues to

experience an unreasonable delay for coverage or payment of benefits under a UIM policy issued by [Allstate]," contrary to N.J.S.A. 17:29BB-3(a)(1). He also contended Allstate "has engaged in and continues to engage in unfair claims settlement practices by failing to adequately address the severity of [his injuries]," in violation of N.J.S.A. 17:29BB-3(a)(2).

After filing an answer and having its motion to change venue denied, Allstate filed a motion to dismiss plaintiff's claim under Rules 4:6-2(e) and 4:38-2(a) without prejudice, "pending the resolution of his UIM claim," consistent with Procopio v. Gov. Employees Ins. Co., 433 N.J. Super. 377 (App. Div. 2013), and Taddei v. State Farm Indem. Co., 401 N.J. Super. 449 (App. Div. 2008). In response, plaintiff conceded his common law bad faith could be dismissed without prejudice, but opposed dismissal of his IFCA-based cause of action.

After considering the parties' written submissions, the court denied Allstate's motion and explained its decision in a written statement of reasons. The court dismissed plaintiff's common law bad faith claim based on consent, but denied Allstate's motion to dismiss the IFCA claim because the Legislature created a "wholly distinct cause of action," when it passed the IFCA which required different proofs from those "needed to resolve the underlying [UM/UIM] claim."

A-0742-25

The court noted "nothing in the [IFCA] . . . indicates that this stand[-]alone cause of action must or should be severed or delayed pending the outcome of the underlying litigation." It further acknowledged resolution of the underlying claim would be "a relevant piece of the puzzle," but "other pieces of the puzzle . . . could ultimately lead to a successful IFCA claim" that warranted litigating both claims at the same time.

The court also relied on the language of the statute and its purpose. It noted an IFCA claim is established "when a [p]laintiff demonstrates 'an unreasonable delay or unreasonable denial of a claim for payment of benefits under an insurance policy,'" (quoting N.J.S.A. 17:29BB-3), and thus, the "very purpose of the IFCA was not to delay the inquiry into whether the [insurance] company has or is unreasonably delaying or denying the claim." The court found that causing further delay by severing and staying the claim, as the common law dictates for bad faith claims, would be "nonsensical and counterintuitive" under the circumstances.

The court noted that it "ma[de] no determination on whether an IFCA claim would be presented to the same trier of fact at the same time as an underlying UM/UIM claim." It explained that decision would be left to trial judges but "envision[ed] . . . that the same trier of fact could separately determine the UM/UIM case and then consider the IFCA claim much like the

mechanics of a bifurcated punitive damages trial under [N.J.S.A.] 2A:15-5.13." The court was also convinced principles of judicial economy supported its conclusion "by having the entire matter (UM/UIM claim plus IFCA claim) 'teed up' for one fact finder albeit in a separate presentation."

With respect to our precedent supporting the severance and stay of common law bad faith claims, the court explained that while those cases were "instructive, [they are] not on point for this wholly new statutory cause of action which the Legislat[ure] intended to be distinct." As noted, after we granted leave to appeal, the parties informed us that they had resolved their disputes regarding the underlying UIM claim.

In light of the subsequent resolution of his UIM claim, Tenenbaum filed a letter of non-participation and expressed his intent not to file a merits brief. He further stated that, to the extent Allstate continued to challenge the court's ruling, he relied upon "the decision of the trial court, notwithstanding we are of the belief that the issue is moot."

For its part, Allstate contends the court erred in permitting plaintiff to prosecute and pursue discovery on their IFCA-based claims while the underlying UIM claim was then unresolved and further asserts the IFCA merely adopted the common law approach to bad faith claims for failure to

A-0742-25

promptly pay an insurance claim, and like those common law claims IFCA claims and any attendant discovery should abide resolution of the UIM claim.

Allstate further maintains that despite the resolution of the UIM claim, the appeal is not moot because the "interests of justice" require us to determine the applicability of the IFCA to claimants in plaintiff's position. (citing Brundage v. Estate of Carambio, 195 N.J. 575, 599 (2008)). Specifically, it asserts the court's decision forces Allstate to participate in "bad-faith discovery," and will accordingly result in "irreparable harm and prejudice." Further, Allstate asserts "trial courts require guidance on this issue" because "hundreds of claimants" have amended or filed new complaints to assert violations of the IFCA.

We reject Allstate's argument that its appeal remains justiciable. "Mootness is a threshold justiciability determination . . . ." Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010). Generally, our courts "do not resolve issues that have become moot due to the passage of time or intervening events." Wisniewski v. Murphy, 454 N.J. Super. 508, 518 (App. Div. 2018) (quoting State v. Davila, 443 N.J. Super. 577, 584 (App. Div. 2016)). "An issue is 'moot when our decision sought in a matter, when rendered, can have no practical effect on the existing controversy.'" Redd v. Bowman, 223 N.J. 87, 104 (2015) (quoting Deutsche Bank Nat'l Tr. Co. v.

Mitchell, 422 N.J. Super. 214, 221-22 (App. Div. 2011)). Stated differently, a "case is moot if the disputed issue has been resolved, at least with respect to the parties who instituted the litigation," and "a judgment cannot grant effective relief, or there is no concrete adversity of interest between the parties." Caput Mortuum, L.L.C. v. S & S Crown Servs., Ltd., 366 N.J. Super. 323, 330 (App. Div. 2004) (citations omitted).

Applying these well-settled principles, we conclude the issues raised in Allstate's appeal are moot. As noted, plaintiff never sought declaratory relief with respect to Allstate's failure to provide him with UIM benefits, instead limiting the relief requested to violations of the IFCA and common law bad faith. Once the parties resolved the underlying UIM dispute, the only remaining issues were plaintiff's common law bad faith claim and his IFCA claim.

As such, there remains no outstanding dispute or controversy between Allstate and plaintiff regarding the propriety of discovery and no case to sever or hold in abeyance. Thus, nothing in our decision would have any effect on the litigation. Under these circumstances, we decline to issue an advisory opinion regarding a dispute that no longer exists. See G.H. v. Twp. of Galloway, 199 N.J. 135, 136 (2009) (citing Crescent Park Tenants Ass'n v. Realty Eq. Corp. of N.Y., 58 N.J. 98, 107 (1971)).

9

Although we may consider an issue notwithstanding its mootness if it "presents a question that is both important to the public and likely to recur," Clymer v. Summit Bancorp., 171 N.J. 57, 65-66 (2002), neither circumstance is present here. We are satisfied Allstate's arguments on appeal are not of "great public importance," and to the extent its concerns are likely to recur, we address them below in the context of A-988-25.

A-988-25

We initially note that in A-988-25, plaintiff Cirelli's complaint is distinct from Tanenbaum's in that she sought affirmative declaratory relief to address GEICO's failure to provide her with UIM benefits. She also contended that GEICO committed common law bad faith when it improperly "failed to adjust [her] claims in good faith" and "failed to provide an adequate basis" for denying her "demands for compensation of her personal injuries and UIM benefits." As to her IFCA claim, she alleged GEICO failed to provide any offer or settlement and accordingly requested GEICO acknowledge, investigate, and attempt to amicably resolve the UIM claim in a fair and reasonable fashion.

GEICO denied all of plaintiff's allegations and asserted numerous affirmative defenses including causation, notice, statute of limitations, and those under the New Jersey Automobile Reparation Reform Act, N.J.S.A.

39:6A-1. It thereafter filed an application to sever plaintiff's common law bad faith claim and statutory IFCA cause of action and stay discovery until resolution of her UIM claim. The court initially granted GEICO's application and memorialized its decision in a July 18, 2025 order.

GEICO then moved to extend discovery, and plaintiff filed a cross-motion for reconsideration of the July 18th order. Plaintiff asserted reconsideration was appropriate because the court failed to consider the significance of the enactment of the IFCA, which created a new statutory cause of action to address an insurer's alleged intransigence when adjusting first-party claims.

GEICO opposed plaintiff's application and maintained that accepting her position would effectively circumvent the holdings in, among other cases, Procopio, and Taddei. After considering the parties' submissions and oral arguments, the court entered an August 29th order that granted plaintiff's application thereby vacating its earlier order and permitting prosecution of plaintiff's common law and IFCA claims as well as allowing discovery of those claims, coextensive with her UIM claim.

The court issued both an oral decision and written statement of reasons explaining its decision. In its written decision, the court stated it would not "limit plaintiff's pursuit of the IFCA-based claims" and permitted discovery on

"any issue relevant to plaintiff's entire complaint." In both decisions, the court noted it "relied . . . on the punitive damages [statute] as an example" which "bifurcate[s] trial[s] at the defendant's request," and where the same jury decides both underlying liability and the punitive damages issue. It further explained in a bifurcated punitive damage trial "all of the discovery has been accomplished such that the same trier of fact is able to hear the separate claim." The court noted, however, that it was not "making any determination concerning whether the IFCA claims will be heard by a trier of fact at the same time as the rest of the [p]laintiff's case in chief."

After the court's decision, plaintiff served three deposition notices upon GEICO. Two ostensibly were directed to the individuals responsible for handling plaintiff's claim and requested the witnesses produce documents related to plaintiff's common law and statutory bad faith claims. Indeed, the notices demanded the deponents produce at the time of the deposition a complete copy of GEICO's claim file and GEICO's "Reserves/Profit Loss Ratios as to how long a case is held versus payment of the value associated therewith." Plaintiff also served a deposition notice for the deposition of Todd Combs, the Chief Executive Office of GEICO.

In response, GEICO's counsel objected to the deposition notices and informed plaintiff's counsel that it intended to seek reconsideration of the

12

court's August 29th order. Counsel stated, however, that GEICO would be "happy to produce a witness with relevant knowledge of the subject claim to provide testimony relative to the merits of your client's UIM claim . . . but would not be producing any witnesses to provide testimony relative to the bad faith allegations," which he maintained should be severed and stayed consistent with controlling New Jersey precedent.

Consistent with its representation to counsel, GEICO requested the court reconsider its August 29th order. The court denied GEICO's motion in an October 10th order and explained its decision in an oral decision.

As noted, we granted GEICO's motion for leave to appeal. GEICO subsequently requested we stay any bad faith discovery. We granted its application and stayed discovery solely with respect to GEICO's bad faith claims and expressly permitted discovery to proceed on plaintiff's UIM claim.

Before us, GEICO reprises the arguments it unsuccessfully asserted before the trial court, maintaining the court erred in granting plaintiff's application for reconsideration and thereby permitting her to prosecute and pursue discovery on her common law bad faith and IFCA-based claims while the underlying UIM claim remained unresolved. It contends permitting discovery on the common law claims is contrary to the holding in Procopio, and further asserts the IFCA merely adopted the common law approach to bad

A-0742-25

faith claims for failure to promptly pay an insurance claim and thus like those common law claims the IFCA claim should be severed and stayed, pending the outcome of the underlying UM/UIM action.

## II.

We begin with a discussion of the relevant standard of review. We acknowledge that a trial court "has broad case management discretion." Lech v. State Farm Ins. Co., 335 N.J. Super. 254, 260 (App. Div. 2000). To that end, Rule 4:38-2(a) instructs that "[t]he court, for the convenience of the parties or to avoid prejudice, may order a separate trial of any claim, cross-claim, counterclaim, third-party claim, or separate issue, or of any number of claims, cross-claims, counterclaims, third-party claims, or issues."

The authority to sever claims "rests in the trial court's discretion." Procopio, 433 N.J. Super. at 380 (App. Div. 2013) (citing Tobia v. Cooper Hosp. Univ. Med. Ctr., 136 N.J. 335, 345 (1994)). The authority to stay a proceeding is "also within the sound discretion of the trial court." Ibid. (citing State v. Kobrin Sec., 221 N.J. Super. 169, 174 (App. Div. 1987), rev'd, 111 N.J. 307 (1988)). Our court has noted the power to stay proceedings and sever claims "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for

14

itself, for counsel, and for litigants." Ibid. (quoting Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936)).

Further, we apply "'an abuse of discretion standard to decisions made by [the] trial courts relating to matters of discovery.'" C.A. by Applegrad v. Bentolila, 219 N.J. 449, 459 (2014) (alteration in original) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)). We "'generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion[,] or its determination is based on a mistaken understanding of the applicable law.'" Ibid. (quoting Pomerantz Paper Corp., 207 N.J. at 371). Finally, "the decision to grant or deny a motion for reconsideration rests within the sound discretion of the trial court." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). Accordingly, we will not disturb a trial court's decision on a motion for reconsideration unless there is a clear abuse of discretion. Ibid.

We first discuss the principles underlying bad faith claims in the first-party context as discussed in Pickett, and then the progeny of cases that establish the common law approach to staying those claims and suspending discovery while an underlying UIM/UM claim is pending.

Pursuant to New Jersey law, the duty to act in good faith is "an implied term of every contract," including insurance policies. Pickett, 131 N.J. at 467.

A-0742-25

"The good faith obligations of an insurer to its insured run deeper than those in a typical commercial contract." Badiali v. New Jersey Mfrs. Ins. Grp., 220 N.J. 544, 554 (2015). The scope of an insurer's duty, however, "is not to be equated with simple negligence." Pickett, 131 N.J. at 481.

"If there is a valid question of coverage, i.e., the claim is 'fairly debatable,' the insurer bears no liability for bad faith." Wacker-Ciocco v. Gov't Emps. Ins. Co., 439 N.J. Super. 603, 611 (App. Div. 2015) (citing Pickett, 131 N.J. at 473-74). "This standard continues to apply to bad faith claims." Ibid. (citing Badiali, 220 N.J. at 544). We further note an insurer may make a mistake in its decision without necessarily acting in bad faith. Id. at 613 (citing Universal-Rundle Corp. v. Com. Union Ins. Co., 319 N.J. Super. 223, 249 (App. Div. 1999)).

In Taddei, in which the primary issue before the court was whether an insured was entitled to the full amount of damages based upon a jury award or the policy limits on the claimant's UM coverage, we nevertheless discussed the recommended procedure to address coextensive claims of bad faith and coverage disputes. 401 N.J. Super. at 455. As we explained:

> To respect the rights of all parties, the underlying claim could be severed from the bad faith claim, with the latter being held in abeyance until conclusion of the former. The severed bad faith claim would then be activated, triggering the possibility for the right to discovery, motions, and, if necessary, a separate trial.

16

In this way, the plaintiff's ability to pursue a potential bad faith claim would be preserved, but the insurer would not be required to produce its claim file prematurely, otherwise, privileged material may be disclosed which would jeopardize the insurance company's defense.

[Id. at 456-66 (internal citations omitted).]

In Procopio, we considered a matter involving UIM and common law bad faith claims and addressed the propriety of severing and staying the bad faith component of the litigation as suggested in Taddei. 433 N.J. Super. at 378. We concluded the court's order that bifurcated trials but allowed simultaneous discovery on the UIM and common law bad faith claims was "an erroneous exercise of discretion." Id. at 384. We held the more appropriate approach would be to sever and stay discovery with respect to both claims so as to:

> promote[] judicial economy and efficiency by holding in abeyance expensive, time-consuming, and potentially wasteful discovery on a bad faith claim that may be rendered moot by a favorable ruling for the insurer in the UM or UIM litigation. [Moreover,] [t]his procedure also avoids the premature disclosure of arguably privileged materials to the prejudice of the insurer's defense while, at the same time, preserving the insured's pursuit of its bad faith claim.
>
> [Id. at 381.]

We also explained in Procopio that "[p]reserving the insured's ability to pursue his or her bad faith claim while deferring discovery thereon until

17

resolution of the [underlying] claim best accommodates the varying interests involved." Id. at 383. We concluded bifurcation discouraged abusive pleading practices because:

> [I]f an insured attempting to prove the validity of his or her claim against an insurer could obtain the insurer's investigative files—showing exactly how the company processed the claim, how thoroughly it was considered and why the company took the action it did—merely by alleging the insurer acted in bad faith, then there would be an open invitation to all plaintiffs to include such allegations with every breach of contract claim.
>
> [Procopio, 433 N.J. Super. at 383.]

In light of these concerns, we decided the benefits of simultaneous discovery were "substantially outweighed by the burdens exacted both institutionally and individually." Id. at 383-84.

Finally, in Wacker-Ciocco, the trial court, as in this case, denied GEICO's application to sever plaintiff's bad faith claim from the merits of the UIM case. 439 N.J. Super. at 605. It distinguished Procopio because GEICO produced some discovery regarding plaintiff's bad faith claim prior to filing its severance application. Ibid. We reversed, applied the principles in Procopio, and concluded the trial court misapplied its discretion in denying the severance motion and requiring discovery of both the bad faith and UIM causes of action despite the partial production of bad faith discovery:

18

> [T]he denial of GEICO's motion to sever and stay and the orders compelling discovery pertaining to the bad faith claim were based upon a mistaken understanding of the applicable law. . . .  In Procopio, we clearly endorsed the principle that proof an insured is entitled to coverage as a matter of law is a necessary pre-requisite to pursuing discovery regarding a bad faith claim.
>
> [Id. at 613-14.]

In light of the principles established in Procopio, Taddei, and Wacker-Ciocco, New Jersey courts, as a matter of common practice, regularly sever first-party breach of insurance contract claims from bad faith claims, stay discovery of the bad faith claim, and proceed with resolution of the contract-based claims before addressing the merits of any bad faith claim.

Against this background, in February 2020, Senate Bill No. 1559, entitled "New Jersey Insurance Fair Conduct," was first introduced "to establish a private cause of action for first-party claimants regarding certain unfair or unreasonable practices by their insurer."  S. 1559 (2020). Specifically, and relevant to the case before us, the bill, as provided in its sponsor's statement, was intended to establish that "a claimant may file a civil action . . . against its automobile insurer for . . . an unreasonable delay or unreasonable denial of a claim for payment of benefits under an insurance policy . . . ."  Ibid.  We note at no point during the drafting process was

19

"unreasonable delay or unreasonable denial of a claim" defined. See S. 1559 (2021) (third reprint).

After three subsequent reprints and adoption by the Legislature, Governor Philip D. Murphy signed into law the IFCA, effective January 18, 2022. As noted, the IFCA provides a private cause of action for first-party claimants[3] to sue their insurance companies if the insurer unreasonably denies or delays legitimate claims in uninsured and underinsured motorist cases. Specifically, N.J.S.A. 17:29BB-3(a) provides that "in addition to the enforcement authority provided to the Commissioner of Banking and Insurance . . . or any other law":

> [A] claimant, who is unreasonably denied a claim for coverage or payment of benefits, or who experiences an unreasonable delay for coverage or payment of benefits, under an uninsured or underinsured motorist policy by an insurer may . . . file a civil action in a court of competent jurisdiction against its automobile insurer for:
>
> > (1) an unreasonable delay or unreasonable denial of a claim for payment of benefits under an insurance policy; or

---

[3] The IFCA defines a "first-party claimant" or "claimant" as "an individual injured in a motor vehicle accident and entitled to the uninsured or underinsured motorist coverage of an insurance policy asserting an entitlement to benefits owed directly to or on behalf of an insured under that insurance policy." N.J.S.A. 17:29BB-2.

A-0742-25

(2) any violation of the provisions of [N.J.S.A. 17:29B-4].[4]

[(Emphasis added).]

The consequences for a breach of an insurer's duties under the IFCA are significant. Indeed, a prevailing claimant is entitled to actual damages up to three times the coverage amount, pre- and post-judgment interest, attorneys' fees, and litigation expenses. N.J.S.A. 17:29BB-3(d).

We first reject GEICO's unsupported assertions that the IFCA is merely a statutory restatement of Pickett as unmoored from the express language of the IFCA. See Jeffrey W. Stempel, The 2022 New Jersey Insurance Fair Conduct Act and the Incomplete Evolution of Policyholder Protection, 75 Rutgers L. Rev. 185, 239 (2022) ("Although one can argue that the IFCA displaces common law bad faith, it is a weak argument. . . . [N]othing in the language of the IFCA suggests that it was intended to abrogate common law bad faith actions."). Indeed, in addition to an unreasonable delay or denial of a claim, the IFCA incorporates violations of the UCSPA to support a cause of action and does not expressly incorporate Pickett's "fairly debatable" standard,

---

[4] N.J.S.A. 17:29B-4 is a section of New Jersey's Unfair Claims Settlement Practices Act (UCSPA), N.J.S.A. 17:29B-1 to -19, which prohibits "unfair method[s] of competition or [ ] unfair or deceptive act[s] or practice[s] in the business of insurance." N.J.S.A. 17:29B-3. N.J.S.A. 17:29B-4 defines and enumerates those prohibited "unfair methods of competition and unfair or deceptive acts or practices."

which the Legislature was clearly aware of when it passed the IFCA. N.J.S.A. 17:29BB-3(a); Comm. of Petitioners for Repeal of Ordinance No. 522 (2013) of Borough of W. Wildwood v. Frederick, 435 N.J. Super. 552, 567 (App. Div. 2014) (quoting David v. Gov't Emps. Ins. Co., 360 N.J. Super. 127, 143 (App. Div. 2003) ("It is firmly established that '[t]he Legislature is presumed to know the law.'")). Here, it expressly states it is "in addition to" any "other law." N.J.S.A. 17:29BB-3(a); DiProspero v. Penn, 183 N.J. 477, 492 (2005) (alteration in original) (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)) ("It is not the function of this Court to 'rewrite a plainly-written enactment of the Legislature []or presume that the Legislature intended something other than that expressed by way of the plain language.'"). Further, the IFCA creates unique damages to those afforded under a Pickett claim, such as a successful claimant's right to attorney's fees and additional damages capped at three times the coverage limits. N.J.S.A. 17:29BB-3(d).

For certain, circumstances will undoubtedly exist where the facts of a Pickett-based bad faith claim and an IFCA claim overlap. Other disputes, however, may involve an insured's assertions that its insurer's unreasonable delays, or violations of the UCSPA, apart from any improper coverage denial, are the animating acts that caused the damages contemplated by the IFCA.

A-0742-25

Despite our acknowledgment that <u>Pickett</u>-based common law bad faith claims and IFCA claims can support separate and distinct causes of action with additional remedies, we nevertheless disagree with plaintiff that the new statutory claim automatically trumps the considered and principled reasons supporting a stay of discovery and severance in this case for the reasons detailed in <u>Procopio</u>, <u>Taddei</u>, and <u>Wacker-Ciocco</u>. We reach this conclusion for the following reasons.

Neither plaintiff, nor the trial court, addressed the practical issues attendant to a lawsuit, like plaintiff's, that includes a UIM dispute and <u>both</u> a common law and statutory claim. Certainly, the existence of the statutory claim does not displace the necessary analysis supporting a severance and stay determination. Under plaintiff's and the court's reasoning, the <u>Pickett</u>-based claims pled in plaintiff's complaint, and any attendant discovery would proceed simply because an IFCA claim has also been asserted. We reject such a categorical conclusion as it fails to address notions of judicial economy, efficiency, and prejudice underlying such highly fact-sensitive discretionary decisions, and permits a common law bad faith claim to proceed without first establishing an insured is entitled to coverage, contrary to New Jersey law. <u>See</u> <u>Taddei</u>, 401 N.J. Super. at 466; <u>Procopio</u>, 433 N.J. Super. at 381; <u>Wacker-Ciocco</u>, 439 N.J. Super. at 611.

A-0742-25

In this case, we are convinced that similar to a common law bad faith claim, severing and staying discovery in an IFCA claim until the underlying UIM claim is resolved generally promotes judicial economy and efficiency by holding in abeyance "expensive, time-consuming, and potentially wasteful discovery that may be rendered moot by a favorable ruling for the insurer in the UM or UIM litigation." Procopio, 433 N.J. Super. at 381. That point is not a hypothetical concern, and we need only examine the discovery plaintiff elected to propound upon GEICO, before it even established she had a right to coverage under the policy, to illustrate the Procopio court's concerns.

Plaintiff not only served deposition notices on two separate claims handlers to address bad faith issues, but determined it appropriate to summon the Chief Executive Officer of a large, multi-state insurer for a deposition. In addition, plaintiff requested production not only of the claims files to address the UIM coverage matters (to which GEICO's counsel did not object), but also GEICO's reserves and "profit/loss ratios" regarding "how long a case is held versus payment of the value associated therewith."

Those discovery demands alone will undoubtedly cause the court and the parties to expend significant time and resources to address the near certain motion practice associated with those requests. See HD Supply Waterworks Group, Inv. v. Director, Div. of Taxation, 29 N.J. Tax 573, 586-88 (2017)

A-0742-25

(granting a protective order for an "apex deposition" of a senior executive in a publicly-traded corporation because such discovery presents a "tremendous potential for abuse or harassment" and movant had not demonstrated "whether the deponent has distinct, personal, and non-repetitive knowledge of the facts at issue and whether less intrusive discovery methods [were not] available."). Discovery regarding reserves will likely involve additional motion practice. See, e.g., Rhone–Poulenc Rorer, Inc. v. Home Indem. Co., 139 F.R.D. 609, 610-11 (E.D.Pa. 1991) (denying a request for an insurer's reserve information after concluding the evidence was of "very tenuous relevance, if any relevance at all" to the dispute and "constitut[ed] work-product material"); see also Leksi, Inc. v. Fed. Ins. Co., 129 F.R.D. 99, 101-02 (D.N.J. 1989). This approach also preserves a plaintiff's ability to pursue a potential IFCA claim without requiring an insurer to prematurely produce otherwise "privileged material." Taddei, 401 N.J. Super. at 466 (quoting Bartlett v. John Hancock Mut. Life Ins. Co., 538 A.2d 997, 1001 (R.I. 1988)); see also Rhone–Poulenc Rorer, Inc., 139 F.R.D. at 610-11.

We readily acknowledge that in this case, in the event plaintiff's UIM case remains unresolved, and she proceeds with both her common law and statutory bad faith claims, additional time and resources will be expended after the UIM claim is resolved. Further, motion practice may ensue and another

25

jury necessarily empaneled. But we do not discern, based on our experience, that those events would take much time or effort (a second jury may be empaneled in hours, not days), when compared to the distraction and time attendant to proceeding with issues unrelated to the UIM coverage, and which our courts recognize would serve as an impediment to an efficient resolution of a litigant's primary right to insurance benefits, if appropriate, including necessary medical payments. Wacker-Ciocco, 439 N.J. Super. at 606.

Again, the present record proves the point: why should a trial court wrestle with a likely protective order application regarding the deposition of a high level insurance executive, address the relevancy and related issues regarding production of profit and loss information, and consider potential privilege issues when all of those concerns may, in certain circumstances, evaporate once the UIM issues are resolved which, in our experience, represents the vast majority of cases? To put the question is to answer it.

Nor do we ignore the possibility, as plaintiff's counsel suggested at oral argument, that plaintiff need not establish coverage to proceed with an IFCA claim. But that possibility too presumptively supports a stay in this case until the landscape of the underlying dispute is addressed. There is no question that even in an IFCA claim, an insurer will be able to defend its actions as "reasonable." For example, an IFCA claim in which an insurer never receives

26

notice of a claim before a lawsuit is filed, promptly acknowledges receipt of a claim, conducts an investigation, and successfully defends an underlying claim on causation or other grounds, certainly is in a fundamentally different circumstance than an insurer who acts contrary to those facts. We are further convinced the significant remedies available to successful litigants under the IFCA will generally incentivize insurers to process UM/UIM claims in a timely manner regardless of whether a stay is entered.

We are also unpersuaded that the Punitive Damages Act, N.J.S.A. 2A:15-5.9 to -17 supports the trial court's remedy. As noted by the <u>Wacker-Ciocco</u> court, unlike that statute, the IFCA contains no statutory mandate for the bifurcation of the substantive and bad faith claims. 439 N.J. Super. at 612 n.8.

A few final, but significant comments. A court's grant of a severance and stay is a highly discretionary decision "limited only by special equities showing abuse of discretion in that injustice would be perpetrated on the one seeking the stay, and no hardship, prejudice or inconvenience would result to the one against whom it is sought." <u>Gosschalk v. Gosschalk</u>, 48 N.J. Super. 566, 579 (App. Div. 1958) (citation omitted). We have detailed the reasons why, in this case, we concluded the court misapplied its discretion. Of course, a different case could support a different result. Some UM/UIM cases are

complicated, involving disputed medical and liability issues requiring a fact finder to resolve, for example, permanency and causation questions. Other cases are substantially less complex and support expedited proceedings.

Additional considerations may include whether a common law and IFCA claim are pled together, or if an IFCA claim is pled alone, the complexity of any coverage related issues, and the discovery requested by plaintiff in support of its bad faith claim, by way of example only. We do not address those circumstances directly because they are not before us. Rather, we simply conclude on these facts, where plaintiff has pled a Pickett-based claim as well as an IFCA claim, and propounded discovery near certain to lead to discovery disputes, in what appears to be a disputed UIM claim, the better course was to abide the resolution of the UIM case. The trial court misapplied its discretion in denying a stay in this case.

To the extent we have not specifically addressed any of the parties' arguments, it is because we have considered them and concluded they do not warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Appeal no. A-742-25 is dismissed as moot. The challenged orders in appeal no. A-988-25 are reversed and the matter remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

28                                                                                    A-0742-25